[Cite as *Miller v. Washburn*, 2016-Ohio-852.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Carol Miller, fka Washburn

     Appellee

v.

Brian Washburn

    Appellant

Court of Appeals No. E-15-006

Trial Court No. 2005 DR 111

**<u>DECISION AND JUDGMENT</u>**

Decided: March 4, 2016

* * * * *

Kenneth E. Bogden, for appellee.

Michael D. Kaufman, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas, Domestic Relations Division, which granted the motion of plaintiff-appellee, Carole F. Miller, fka Carol Washburn ("Miller"), to relinquish jurisdiction in a child custody proceeding to a court in Albany, New York. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} The parties were granted a divorce on October 6, 2006, in the Domestic Relations Division of the Erie County Court of Common Pleas.  The divorce decree designated Miller residential parent and legal custodian of the parties' minor child.  At the time, Miller was a resident of the state of New York and Washburn a resident of the state of Ohio.

{¶ 3} On May 10, 2013, Washburn filed a motion and affidavit to show cause asserting Miller had failed to comply with various "parental rights and responsibilities" outlined in an August 11, 2010 agreed judgment entry allocating parenting time.  On September 27, 2013, Washburn filed a motion and affidavit to modify the parenting agreement.  While those motions were still pending in the trial court, Miller filed a motion to dismiss on the basis that the Ohio court was an inconvenient forum as provided by R.C. 3127.21.  A hearing was held on Miller's motion to dismiss before a magistrate on February 7, 2014.

{¶ 4} On March 31, 2014, after considering the statutory factors set forth in R.C. 3127.21, the magistrate issued a decision finding Ohio an inconvenient forum and recommending the court stay Washburn's motions and allow Miller a "reasonable period of time to commence a child custody proceeding in the State of New York."  Washburn objected to the magistrate's findings.

{¶ 5} On August 25, 2014, Miller filed a response to Washburn's objections and moved to supplement the record with an "Attorney Affirmation" signed by Miller's New York counsel.  The affirmation provided a detailed update, from the attorney's

2.

perspective, on the custody proceedings pending in an Albany County, New York, Family Court. Days later, the trial court granted Miller's motion to supplement. Washburn moved to strike the supplement and portions of Miller's response related to the supplement.

{¶ 6} On December 8, 2014, the trial court adopted the magistrate's decision and issued a judgment entry finding the state of Ohio an inconvenient forum. The trial court indicated that it "had telephone communications with the State of New York and the New York Court is willing to accept jurisdiction of this case." The trial court held:

> New York is <u>not</u> an inconvenient forum based upon the evidence. The minor child has resided in New York with his mother since 2006. In addition to living in New York with his mother, the father has exercised parenting time with the minor child in New York as the father's family members live in New York. The distance between the two courts is extreme, almost 554 miles in each direction, which would either necessitate extensive travel via car, or expensive travel via airplane. Ms. Miller's current income is approximately $40,000.00; it is estimated that Mr. Washburn's current income is approximately $96,000.00. As demonstrated by the difference in incomes, Mr. Washburn is in a position where he can more readily pay for the travel expenses associated with the proceedings in New York. Much of the evidence necessary to demonstrate the need for a modification of the custody Order is in New York; the minor child's

3.

treating physicians are in New York; Ms. Miller and the minor child reside in New York; if any of the coaches, teacher or members of the child's extracurricular activities must testify, they will all be coming from New York. The Ohio Court does not have the requisite power to enforce a subpoena for these witnesses to testify. If the child were to testify, he would either be removed from school or his residence for an extended period of time to accommodate the necessary travel and testimony. Communication by the minor child to his Ohio GAL is much less convenient than communication with his New York GAL. (Emphasis sic.)

{¶ 7} From that judgment, defendant-appellant Brian Washburn ("Washburn") raises the following assignments of error:

I. The trial court erred when it failed to acknowledge that Ohio has exclusive continuing jurisdiction over this matter pursuant to R.C. 3127.26.

II. The trial court erred when it failed to acknowledge and find that New York law does not allow the state of New York to modify a custody determination made by an Ohio court.

III. The trial court erred as a matter of law when it failed to acknowledge and find that even if it were to relinquish jurisdiction over the issue of custody, the trial court would still retain jurisdiction over the issue of child support as R.C. 3115.07 requires that Ohio retain jurisdiction over child support orders it issues as long as the obligor still resides in Ohio.

4.

IV. The trial court erred as a matter of law when it found Ohio to be an "inconvenient Forum."

V. The trial court erred when it admitted plaintiff's exhibit C, into evidence.

VI. Even if the trial court were to find that Ohio is an "Inconvenient Forum," the trial court erred as a matter of law when it failed to issue a stay.

VII. The trial court erred when it supplemented the record with an "Attorney Affirmation" dated August 25, 2014 and which was constructed months after evidence in this matter had closed.

**First Assignment of Error**

{¶ 8} In his first assignment of error, Washburn argues that the trial court erred when it failed to acknowledge that it had exclusive, continuing jurisdiction over the custody matter pursuant to R.C. 3127.26. In response, Miller points to several provisions of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified in Ohio in R.C. 3127.01 through 3127.53, and argues that an Ohio court can decline continued involvement in a child custody dispute even if it has continuing jurisdiction.

{¶ 9} The UCCJEA was adopted in 2004 and became effective in 2005. In *Mulatu v. Girsha*, 12th Dist. Clermont No. CA2011-07-051, 2011-Ohio-6226, the Twelfth District Court of Appeals noted the objectives of the main provisions of the UCCJEA as:

5.

Determining when states can exercise jurisdiction over a child; requiring states to enforce custody determinations; forbidding states from modifying custody determinations made by other states unless the other state no longer had jurisdiction under the [UCCJEA]; requiring states to decline jurisdiction if another state had assumed jurisdiction; and permitting states to decline jurisdiction if another state would offer a more convenient forum.

R.C. 3127.16 entitled "Exclusive continuing jurisdiction," provides:

Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state that has made a child custody determination * * * has exclusive, continuing jurisdiction until the court or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

{¶ 10} Here, it is undisputed that the Erie County Court of Common Pleas has exclusive continuing jurisdiction. However, under the UCCJEA, a court "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more convenient forum." R.C. 3127.21(A).

{¶ 11} Here, the trial court did not fail to acknowledge its exclusive, continuing jurisdiction as asserted by appellant. Thus, we find the argument set forth in appellant's first assignment of error not well-taken.

6.

**Second Assignment of Error**

{¶ 12} In his second assignment of error, Washburn argues that the trial court erred when it "failed to acknowledge that New York law does not allow the state of New York to modify a custody determination made by an Ohio Court." We disagree.

{¶ 13} New York's version of the UCCJEA went into effect April 28, 2002. N.Y. Dom. Rel. Law 75 et seq. The intent of the legislation is to "provide an effective mechanism to obtain and enforce orders of custody and visitation across state lines and to do so in a manner that ensures that the safety of the children." N.Y. Dom. Rel. Law 75(2).

{¶ 14} Section 76-B of New York's UCCJEA entitled "Jurisdiction to modify determination" provides:

> Except as otherwise provided in section seventy-six-c of this title, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under paragraph (a) or (b) of subdivision one of section seventy-six of this title and:
>
> 1. The court of the other state determines it no longer has exclusive, continuing jurisdiction under section seventy-six-a of this title or that a court of this state would be a more convenient forum under section seventy-six-f of this title; or

7.

2.  A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.  N.Y. Dom. Rel. Law 76-B.

{¶ 15} Thus, the first question before us under this assignment of error is whether New York has jurisdiction to make an initial child custody determination.  N.Y. Dom. Rel. Law 76, entitled "Initial child custody jurisdiction" states, in relevant part, as follows:

1.  Except as otherwise provided in section seventy-six-c of this title, a court of this state has jurisdiction to make an initial child custody determination only if:

(a) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(b) a court of another state does not have jurisdiction under paragraph (a) of this subdivision, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section seventy-six-f or seventy-six-g of this title and:

8.

(i) the child and the child's parents, or the child and at least one parent * * * have a significant connection with this state * * *; and

(ii) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(c) all courts having jurisdiction under paragraph (a) or (b) of this subdivision have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section seventy-six-f or seventy-six-g of this title; or

(d) no court of any other state would have jurisdiction under the criteria specified in paragraph (a), (b) or (c) of this subdivision.

"Home state" is defined as "the state in which a child lived with a parent * * * for at least six consecutive months immediately before the commencement of a child custody proceeding." N.Y. Dom. Rel. Law 75-a(7). In this case, when the motion to modify the parenting arrangement was filed by Washburn in September 2013, the child had lived with mother for more than six months in New York. Thus, New York was the child's "home state."

{¶ 16} The second question before us under this assignment of error is whether another court—in this case, the Domestic Relations Division of the Erie County, Ohio, Court of Common Pleas—determined that it no longer had exclusive, continuing jurisdiction or that some other court would be a more convenient forum. As explained in our analysis of Washburn's first and fourth assignments of error, the Erie County Court

9.

of Common Pleas determined that the New York court was a more convenient forum under R.C. 3127.21(A), a statute nearly identical to N.Y. Dom. Rel. Law 75-f.  Thus, we find no merit in Washburn's second assignment of error.

## Third Assignment of Error

{¶ 17} In his third assignment of error, Washburn asserts that the trial court "erred as a matter of law" because it did not "acknowledge" it would "still retain jurisdiction over the issue of child support."  We disagree.

{¶ 18} On December 8, 2014, the trial court issued a judgment entry finding it was an inconvenient forum and that the New York court was a more appropriate forum.

{¶ 19} The issue of child support was not before the court when it issued the December 8, 2014 judgment entry finding it was an inconvenient forum and that the New York court was a more appropriate forum.  Rather, only two matters were before the court:  (1) Washburn's motion to show cause pertaining to parental rights and responsibilities and (2) Washburn's motion to modify custody.  The court did not relinquish jurisdiction on the issue of child support in its December 8, 2014 judgment entry because the issue of child support was not before the court.  Washburn's third assignment of error is denied as moot.

## Fourth Assignment of Error

{¶ 20} In his fourth assignment of error, Washburn contends the trial court erred when it granted Miller's motion to determine Ohio an "inconvenient forum" under the UCCJEA.

10.

**{¶ 21}** "Generally, '[t]he court in which a decree of divorce is originally rendered retains continuing jurisdiction over matters relating to the custody, care, and support of the minor children of the parties.'" *Justis v. Justis*, 81 Ohio St.3d 312, 314, 691 N.E.2d 264 (1998), quoting *Loetz v. Loetz*, 63 Ohio St.2d 1, 2, 406 N.E.2d 1093 (1980). "However a jurisdiction dispute may arise when one parent moves out of state with the children. The question then becomes which state has the authority to exercise jurisdiction over the matter." *Id.*

**{¶ 22}** The UCCJEA "was drafted to avoid jurisdictional conflicts and competition between different states with regard to child custody litigation." *In re N.R.*, 7th District Mahoning No. 09 MA 85, 2010-Ohio-753, ¶ 11. "The intent of the UCCJEA was to ensure that a state court would not exercise jurisdiction over a child custody proceeding if a court in another state was already exercising jurisdiction over the child in a pending custody proceeding." *Id.* citing *Rosen v. Celebreeze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 20-21. Numerous states, including Ohio and New York, have adopted the UCCJEA.

**{¶ 23}** A trial court's decision as to whether to exercise jurisdiction pursuant to the UCCJEA should only be reversed if the court committed an abuse of discretion. *In re N.R.* at ¶ 12 (citations omitted). The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying an abuse of discretion standard, a reviewing court

may not substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶ 24} As stated above, R.C. 3127.21(A) provides that "[a] court of this state that has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more convenient forum." Before determining whether it is an inconvenient forum, an Ohio court must consider whether it is appropriate for another court to exercise jurisdiction. R.C. 3127.21(B). When making this determination,

the court shall allow the parties to submit information and shall consider all relevant factors, including the following:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside the state;

(3) The distance between the court in this state and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

12.

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation. *Id.*

While the trial court must consider all the statutory factors, a reviewing court will presume that the trial court considered the relevant factors in the absence of evidence to the contrary. *Witt v. Walker*, 2d Dist. Clark No. 2012-CA-58, 2013-Ohio-714, ¶ 22-23.

{¶ 25} The record shows that the parties presented evidence relating to all of the factors. Washburn takes issue with some of the trial court's findings of fact. Most notably, he argues that the trial court implied, with regard to the first factor, that domestic violence had occurred. While the trial court's judgment entry does indicate that a previously issued civil protection order merged with and remained in full force and effect until May 26, 2010, the court made no finding that domestic violence had occurred or was likely to continue in the future. In that regard we find no merit in Washburn's argument.

{¶ 26} In regard to the second factor—the length of time the child has resided outside the state—evidence was presented that the parties' child resided in New York from the time of the divorce in 2006 through January 31, 2014.

{¶ 27} In regard to the third factor—the distance between the courts—evidence was presented that the distance between Sandusky, Ohio, and Albany, New York is approximately 554 miles.

13.

{¶ 28} In regard to the fourth factor—the relative financial circumstances of the parties—evidence was presented that Miller's annual income is $40,000 per year and Washburn's income is $96,000 per year.

{¶ 29} In regard to the fifth factor—any jurisdiction agreement between the parties—evidence was presented that Washburn did not agree to allow the New York court to assume jurisdiction over the matter.

{¶ 30} In regard to the sixth factor—nature and location of the evidence required resolving the pending litigation—evidence was presented that a majority of the child's immediate and extended family members have residences in New York. Evidence was further presented that other potential witnesses, including the child's treating physician, dentist, teachers, and childcare providers are residents of New York.

{¶ 31} In regard to the seventh factor—ability of the courts of each state to determine the issue—the trial court stated on the record that it had contacted the New York court and the New York court had indicated it was willing to "take the case if [the trial court] chose to find Ohio to be an inconvenient forum."

{¶ 32} In regard to the eighth factor—the familiarity of each court with the facts and issues in the pending litigation—it is clear that the Ohio court has extensive knowledge of the matter, and that the New York court had some knowledge of the matter.

{¶ 33} In our opinion competent, credible evidence supported the trial court's finding that Ohio was an inconvenient forum. Our review of the record shows that all of the trial court's factual findings were supported by competent, credible evidence. *See*

14.

*Shemo v. Mayfield Hts.*, 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000). Further, the record shows that the trial court considered all of the statutory factors. After reviewing the record, we cannot hold that the trial court abused its discretion in weighing those factors. The primary issue that the parties have been litigating involved custody; this issue can be handled by the New York court, particularly given that the child has lived in New York since October 2006.

{¶ 34} We cannot hold that the trial court's decision was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. Thus, we find Washburn's fourth assignment of error not well-taken.

**Fifth Assignment of Error**

{¶ 35} In his fifth assignment of error, Washburn argues that the trial court erred when it allowed Miller to introduce a written summary demonstrating the number of days the child was in New York with Miller, the days the child was in New York with Washburn, and the days the child was in Ohio with Washburn.

{¶ 36} A decision to admit or exclude evidence will be upheld absent an abuse of discretion. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 20.

{¶ 37} Evid.R. 1006, entitled "Summaries," provides:

The content of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall

15.

be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

{¶ 38} When asked to identify the exhibit, Miller explained, "[t]his is an Excel spreadsheet indicating all the months from October 2006 until January 2014 partitioning out the days spent in New York with the custodial parent, visitation days spent outside of Ohio and visitation days spent inside of Ohio." Miller indicated that the information came from "her own personal knowledge." Washburn objected to the admission of the testimony and summary for failure to provide a proper foundation. The trial court overruled the objection.

{¶ 39} On cross-examination, Miller could not recall specifically which days the child spent in Ohio. Rather, she indicated that she would "have to refer back to the email documentation" and that the days were "delineated in the Divorce Decree." Washburn did not request nor did the court order production of the emails or divorce decree.

{¶ 40} Upon review of the record, we find that the trial court did not abuse its discretion in relying on Miller's summary, rather than her emails, to determine the number of days the child was in New York during the period in question because Washburn never objected to the admissibility of the documents upon which the summary was based nor did he request the documents be produced. Appellant's fifth assignment of error is not well-taken.

16.

## Sixth Assignment of Error

{¶ 41} In his sixth assignment of error, Washburn asserts, in the alternative, that if the trial court did not err in finding Ohio an inconvenient forum, it did err, as a matter of law, when it failed to issue a stay on the proceedings as required by R.C. 3127.21(C). In response, Miller asserts that because the trial judge adopted the magistrate's decision granting the stay, the trial court did not violate the statute's stay requirement.

{¶ 42} R.C. 3127.21(C) provides:

> If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

{¶ 43} Here, the trial court adopted the magistrate's decision and entered judgment finding that it was an inconvenient forum and that the New York court is a more appropriate forum. The entry contained no order staying the proceeding and was designated a final appealable order. Thus, the judgment entry did not comply with R.C. 3127.21(C). However, there is no evidence that the parties were prejudiced by the trial court's failure to stay the proceedings. Thus any error is harmless. Appellant's sixth assignment of error is not well-taken.

**Seventh Assignment of Error**

{¶ 44} In his seventh assignment of error, Washburn argues that the trial court erred when it allowed Miller to supplement the record with an attorney affirmation dated August 25, 2014, "months after evidence in this matter was closed."

{¶ 45} However, a trial court has the discretionary power "to take new evidence after a matter has already been referred to a magistrate, regardless of whether objections have been filed to that magistrate's decision." *In re N.R.*, 7th Dist. Mahoning No. 09 MA 85, 2010-Ohio-753, at ¶13, citing Civ.R. 53(D)(4)(b). Thus, Washburn's argument is without merit. Washburn's seventh assignment of error is not well-taken.

**Conclusion**

{¶ 46} For the reasons set forth above, the judgment of the Erie County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

18.

Arlene Singer, J.                                        _____
                                                                            JUDGE

Thomas J. Osowik, J.

                                        _____
James D. Jensen, P.J.                                        JUDGE
CONCUR.

                                        _____
                                                                            JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.